(December 28, 1989)

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SOLOMON WITHERSPOON, Appellant. THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TERRENCE CARTER, Also Known as TERRANCE CARTER, Appellant.—Judgment of the Supreme Court, New York County (Rose L. Rubin, J.), rendered November 4, 1987, convicting defendant Witherspoon, after jury trial, of criminal sale of a controlled substance in the fifth degree and criminal possession of a controlled substance in the seventh degree, and sentencing him as a predicate felon to a term of 2½ to 5 years on the sale conviction and a concurrent

term of one year for the possession conviction, is unanimously affirmed.

Judgment of the Supreme Court, New York County (Rose L. Rubin, J.), rendered November 16, 1987, convicting defendant Carter, after jury trial, of criminal sale of a controlled substance in the fifth degree, and sentencing him as a predicate felon to a term of 2½ to 5 years, is unanimously affirmed.

These convictions arise out of the sale of narcotics by defendants Solomon Witherspoon and Terrence Carter to one Charles Humphrey, observed by police officers. Humphrey was immediately arrested after the sale in possession of a pink envelope with the controlled substance PCP. Thereafter, the officers observed defendants for the next two hours take part in additional narcotics transactions, before arresting them. Defendant Witherspoon had PCP in his possession at that time.

Prior to trial, the prosecutor sought permission to elicit testimony from one of the officers that similar drug exchanges of money for pink envelopes had taken place after the charged sale, in order to show that both defendants had acted in concert during the Humphrey sale. The court permitted this testimony and Officer Higgins testified that for the two hours following the sale he observed three to five similar transactions in which Carter handed individuals pink envelopes in exchange for money and in turn gave the money to Witherspoon. The evidence of the uncharged criminal conduct was relevant to show a pattern of activity by defendants and supports the conclusion that they had acted in concert in the earlier Humphrey sale. This pattern of activity demonstrated the method of operation of defendants and helped to show that they had acted in concert in the charged sale and, therefore, testimony as to it was properly admitted (see, People v Jackson, 39 NY2d 64, 67, 68).

Defendants contend that because Officer Higgins testified that he saw Carter hand Witherspoon the proceeds from the Humphrey sale, this was sufficient to establish the element of acting in concert, and evidence of other sales was, therefore, unnecessary and merely cumulative. However, at trial the element of acting in concert was hotly disputed. Indeed, defense counsel, in both opening and summation, suggested that Officer Higgins could not have seen any exchange between Humphrey and Carter and the subsequent transfer of money to Witherspoon.

There was no necessity for the People to present only a bare

modicum of evidence to establish a prima facie case, since the issue was in dispute, but they were entitled to present all admissible evidence available to them (see, *People v Alvino*, 71 NY2d 233, 245).

Further, defendants were not arrested until two hours after the charged sale. This was raised by the defense in asserting a claim of mistaken identity. Under these circumstances, Officer Higgins' testimony was also admissible to establish that both defendants were under surveillance for the entire period after the sale and before the arrest. It also served to avoid speculation as to why defendants were not arrested until two hours after the charged sale and whether others may have been the real sellers.

While the court should have given a limiting instruction on the use of this evidence, its failure to do so under the circumstances herein does not require reversal. The brief testimony of Higgins concerning the other transactions was "minimal and generalized" and "the prosecution, the court and defense counsel focused the jury's attention on the charged sale" in "detailed and extensive testimony" (*People v Williams*, 67 AD2d 265, 268, *affd* 50 NY2d 996).

Defendants' contention that the midtrial disclosure of three pieces of *Rosario* material (*People v Rosario*, 9 NY2d 286) entitles them to a new trial is also without merit. The material included the chemist's handwritten notations of the findings and two police forms requesting laboratory analysis of the drugs. As to the chemist's report, the court quite properly found that the handwritten notes were the duplicative equivalent of the formal laboratory reports (see, *People v Payne*, 52 NY2d 743). As to the police forms, the defense was allowed to review the documents and then recall Officer Higgins for further cross-examination.

The prosecutor is obligated to turn over to the defense any pretrial statement of its witnesses relating to their testimony after the jury is sworn and before its opening statement (see, CPL 240.45 [1] [a]). Failure to so disclose requires reversal without any consideration of harmless error (*People v Jones*, 70 NY2d 547, 551). However, mere delay in turning over the material, especially when inadvertent, will be deemed harmless error if there is no substantial prejudice to the defense on account of the delay (see, *People v Martinez*, 71 NY2d 937, 940). Here, there was no such substantial prejudice to the defendants because of the delay. The chemist's notes were received in adequate time for defendants to use them in cross-

examination, and as noted, they were the duplicative equivalent of the formal lab reports. The belated disclosure of the police requests for laboratory analysis also was not prejudicial. Officer Higgins was recalled for further cross-examination and defendants were offered a full opportunity to both examine and use the documents on such cross-examination.

We have examined the remaining contentions of defendants and find them to be without merit. Concur—Murphy, P. J., Sullivan, Ross, Asch and Wallach, JJ.