86 N.Y.2d 470 (1995)
657 N.E.2d 1311
634 N.Y.S.2d 28
In the Matter of James T. Curry, Appellant,
v.
Morrison J. Hosley, Jr., et al., Respondents.
Court of Appeals of the State of New York.
Argued October 24, 1995.
Decided October 26, 1995.
Hancock & Estabrook, LLP, Syracuse (Alan J. Pierce and Patrick M. Connors of counsel), for appellant.
Muller and Muller, Glens Falls (Robert J. Muller of counsel), for Morrison J. Hosley, Jr., respondent.
Charles J. Hynes, District Attorney of Kings County, Brooklyn (David J. Fried of counsel), for The New York State District Attorneys Association, amicus curiae.
Chief Judge KAYE and Judges SIMONS, TITONE, BELLACOSA, SMITH and CIPARICK concur in Per Curiam opinion; Judge LEVINE dissents and votes to affirm in a separate opinion.
*472 Per Curiam.
Petitioner (James Curry), the Republican Party candidate, instituted this Election Law § 16-102 proceeding to remove respondent (Morrison Hosley) as a candidate on the November 7, 1995 ballot for the office of Hamilton County District Attorney. The sole issue before us is whether New York law permits Hosley, who is not an attorney, to serve as the District Attorney. We conclude that the legal nature of the important public responsibilities entrusted to the District Attorneys of this State requires that such individuals be lawyers admitted to practice.
Unique historical circumstances have led to this appeal. In counties throughout New York State, the District Attorney is an attorney and indeed the District Attorney of Hamilton County  a rural upstate county with a population of approximately 5,000  has for the last three decades been an attorney. Petitioner himself (the incumbent) is an attorney. For more than 100 years between the 1830's and 1960's, however, the office of District Attorney of Hamilton County was ordinarily held by nonlawyers. Indeed, the last time the Court considered the legal issue presented was in 1963, also in the context of an election appeal challenging a nonattorney candidate for that office (Matter of Drake v McAfee, Sup Ct, Hamilton County, Aug. 17, 1963, affd without opn 19 AD2d 784 [Aug. 30, 1963], affd without opn 13 N.Y.2d 878 [Aug. 30, 1963]).
Notwithstanding this uncommon state of affairs in Hamilton County, it cannot be disputed that "the District Attorney is a constitutional officer chosen by the electors of a county" (Matter of Schumer v Holtzman, 60 N.Y.2d 46, 50). The Constitution speaks of elections not for the office of "county prosecutor" or "government solicitor," but instead for the office of "district attorney" (NY Const, art XIII, § 13 [a] [emphasis added]). The Constitution further states that "[a]ny district attorney who shall fail * * * to prosecute a person charged with the violation * * * of any provision of this article which may come to his knowledge, shall be removed from office" (NY Const, art XIII, § 13 [b] [emphasis added]). These provisions indicate the use of the word "attorney" in its commonly understood sense (see, Matter of Sposato [Graham], 180 Misc 933, 936; People v Carter, 77 N.Y.2d 95, 108 [Titone, J., dissenting])  an attorney-at-law and an officer of the court qualified to prosecute and defend legal actions on behalf of clients, *473 bound by rules and principles of professional ethics and subject to internal processes of attorney discipline (see, Judiciary Law § 90; Code of Professional Responsibility EC 3-3). Unlike the many attorneys who represent the interests of private citizens, the District Attorney's client is the people of the State of New York (see, Matter of Schumer v Holtzman, 60 N.Y.2d 46, 51, supra).
Moving beyond the language of the Constitution, our conclusion that respondent, as a nonlawyer, is not eligible for election to the position of Hamilton County District Attorney is reinforced by the existence of the various statutory provisions delineating the duties of District Attorneys in this State and granting the District Attorney broad "discretion to investigate, initiate, [and] prosecute" crimes (People v Zimmer, 51 N.Y.2d 390, 394). Indeed, by virtue of this discretion, a District Attorney may have "more control over individuals' liberty and reputation * * * than * * * any other public official" (id.).
County Law § 700 (1) ("District attorney; powers and duties"), for example, states that "[i]t shall be the duty of every district attorney to conduct all prosecutions for crimes and offenses cognizable by the courts of the county for which he shall have been elected" (see also, County Law § 927 ["General duties of district attorneys"]). Other statutes provide that the District Attorney is the legal advisor to the Grand Jury charged with submitting evidence to it (CPL 190.25 [6]; 190.55 [2]; see also, People v Di Falco, 44 N.Y.2d 482, 487 [noting "breadth and importance of the duties placed upon the District Attorney in Grand Jury proceedings"]) and that applications for eavesdropping or video surveillance warrants must be made by the District Attorney to the court (CPL 700.05 [5]).
In an attempt to avoid the difficulties inherent in a nonlawyer's performance of these important legal functions, respondent argues that a 1911 statute would authorize him, if elected, to appoint attorneys from neighboring counties and delegate his legal work  including seeking indictments and trying cases  to them (see, L 1911, ch 665). Because the statutory duties of the District Attorney are "fundamental responsibilities" of the office, however, they may not be wholly transferred to others (Matter of Schumer v Holtzman, 60 N.Y.2d 46, 53, supra). Though the elected District Attorneys in this State are certainly entitled to employ other lawyers to serve as assistants under their supervision (see, County Law §§ 702, 825, 930), allowing the nonattorney District Attorney *474 of Hamilton County to carry out his statutory responsibilities by hiring assistants to prosecute crimes on his behalf  without the safeguards inherent in the District Attorney's exercise of his own professional judgment  would constitute the kind of wholesale transfer of public responsibility we cautioned against in Matter of Schumer.
Such sweeping delegation might even constitute a violation by the District Attorney's assistant of the ethical guidelines that govern the professional conduct of attorneys. Specifically, County Law § 702 (2) provides that "[t]he assistant [District Attorney] shall perform such duties pertaining to the office as may be directed by the district attorney." The Code of Professional Responsibility, however, prohibits lawyers from helping nonlawyers in the practice of law (Code of Professional Responsibility DR 3-101 [22 NYCRR 1200.16]), from forming "partnerships" with nonlawyers (Code of Professional Responsibility DR 3-103 [22 NYCRR 1200.18]), and discourages them from "submitting to the control of others in the exercise of * * * judgment" (Code of Professional Responsibility EC 3-3).[*]
Respondent's reliance on People v Carter (77 N.Y.2d 95, supra) is similarly misplaced. In that case, we rejected the argument that the convictions of two criminal defendants were fatally defective because Daniel Penofsky, the Assistant District Attorney who presented their cases to a New York City Grand Jury, had never been admitted to the Bar, though he was a law school graduate with 16 years' experience. The focus in Carter was whether the fact that the defendants were prosecuted by a nonadmitted prosecutor deprived them of their right to the integrity of the Grand Jury process and to due process of law. On the facts, we held that the convictions were valid. Nevertheless, we explicitly pointed out that "[n]o one disputes that defendants should have been prosecuted for these felonies by an Assistant District Attorney who was duly admitted to practice" (id., at 106). Additionally, we cited the very American Bar Association Criminal Justice Standard *475 which recommends that "[t]he prosecution function * * * be performed by a * * * lawyer subject to the standards of professional conduct and discipline." (ABA Standards for Criminal Justice, Prosecution Function, standard 3-2.1 [3d ed 1993].)
Thus, even though we may have stated broadly in Carter that "neither the Constitution nor any statute requires that a District Attorney or an Assistant District Attorney be an admitted lawyer" (77 NY2d, at 105), we did not consider the precise question presented here  namely, whether it is necessary for a prosecutor to have any training as a lawyer at all, or more particularly, whether training as a lawyer and admission to the Bar are necessary criteria for eligibility for the elected office of District Attorney. Now reaching that question, we conclude that they are.
In light of the above, to the extent that our 1963 affirmance without opinion of a trial court decision allowing Edward Galusha, a nonattorney, to run for Hamilton County District Attorney in Matter of Drake can be read to have created a special exception for Hamilton County, that decision is overruled. The possible practical difficulties that might ensue given the few admitted lawyers in Hamilton County cannot override the important legal principle, applicable throughout the State, that the nature of the District Attorney's duties and responsibilities to the public require the officeholder to be an attorney.
Accordingly, the order of the Appellate Division should be reversed, without costs, and the judgment of Supreme Court reinstated.
LEVINE, J. (dissenting).
I respectfully dissent. There have been no fundamental changes in the law nor in the status of Hamilton County since 1963 that warrant a departure from the settled principles of stare decisis.
When we affirmed the denial of a petition to remove a nonlawyer candidate from the ballot for District Attorney in Hamilton County in Matter of Drake v McAfee (13 N.Y.2d 878), there were, according to the Supreme Court decision in that case, six attorneys residing in Hamilton County eligible for the office of District Attorney. Of those six, three were already holding public office. According to the record in this case, there are currently eight attorneys residing in Hamilton County, three of whom already hold public office. On these facts, it cannot be said that there no longer exists a "dearth" *476 of qualified attorney candidates willing to serve as District Attorney in Hamilton County. Petitioner argues that the fact that the position of District Attorney has been filled by a lawyer since 1966, whereas nonlawyers filled this position from the 1830s until 1941 and again from 1944 to 1966, provides evidence that the previous sui generis nature of that County no longer exists. However, that the electorate of Hamilton County has most recently chosen to elect a District Attorney who is a lawyer does not change the significance of the statistics with which we are presented. Because there are so few lawyers in the County, if the electorate were limited to candidates who are lawyers, there is a substantial likelihood that they would not have two candidates to choose from, thus effectively eliminating electoral choice. Indeed, the distinct possibility continues to exist that at some point in the future there will be no qualified attorney in the County willing to run for or serve as District Attorney, thereby depriving the County of a constitutional officeholder.
Likewise, the fundamental duties of the District Attorney  to conduct all prosecutions (County Law § 700 [1]) and to act as legal advisor to the Grand Jury (CPL 190.25 [6])  were well established before Drake was decided. Subdivision (1) of County Law § 700 was enacted in essentially the same form in 1908 (L 1908, ch 262, § 1). Subdivision (6) of CPL 190.25 is derived from sections 262 to 264 of the Code of Criminal Procedure, enacted in 1881. Similarly, it was just as illegal for a layperson to practice law in 1963 as it is today. Judiciary Law § 478, enacted in 1965, is derived from a provision of the former Penal Code enacted in 1898 (L 1898, ch 165, § 4).
Drake was decided on practical considerations and in recognition of the sui generis nature of Hamilton County. Nothing has changed since then that warrants a different result in this case. Nor does our decision in Matter of Schumer v Holtzman (60 N.Y.2d 46) require a different result. There we recognized that it is improper for the District Attorney to divest herself of ultimate responsibility and accountability for decisions of whom, whether and how to prosecute (id., at 53). However, it does not follow that it is also improper for a duly elected District Attorney (whether a lawyer or layperson) who retains responsibility and accountability for these decisions, to make them in consultation with a legal advisor. Moreover, by enacting chapter 665 of the Laws of 1911, the Legislature recognized that the District Attorney of Hamilton County would have need to delegate his or her purely legal functions to a *477 licensed attorney and that such assistant, given the dearth of lawyers in the County, could be a resident of either Hamilton County or any adjoining county.
To the extent there might be a technical violation of the Code of Professional Responsibility if a licensed Assistant District Attorney takes direction from a nonlawyer District Attorney on the issue of whether to prosecute, we have already held that the Code, "[w]hile unquestionably important, and respected by the courts, * * * does not have the force of law" (Niesig v Team I, 76 N.Y.2d 363, 369 [Kaye, J.]). Moreover, where application of the Code affects the interests of others, we have acknowledged that "`we must use our judicial process to make our own decision in the interests of justice to all concerned'" (S & S Hotel Ventures Ltd. Partnership v 777 S.H. Corp., 69 N.Y.2d 437, 443 [Kaye, J.], quoting Foley & Co. v Vanderbilt, 523 F.2d 1357, 1360 [Gurfein, J., concurring]). Thus, the majority's reliance on the disciplinary rules in this context ignores our duty to protect the interests of the Hamilton County electorate. Furthermore, the public would be sufficiently protected against disciplinary violations because the Assistant District Attorneys, the actual in-court prosecutors, would be subject to professional disciplinary rules.
To ignore stare decisis, and the statutory and constitutional rights of the electorate of Hamilton County to the same legitimate choices afforded the electorate elsewhere in this State, will serve no purpose. For these reasons, I vote to affirm.
Order reversed, etc.
NOTES
[*] Though surely not binding on courts as a matter of law (see, dissenting opn, at 477), the Code of Professional Responsibility is nevertheless binding on attorneys, guiding them in maintaining professional standards and subjecting them to professional discipline (see, EC 3-3 ["The public interest is best served in legal matters by a regulated profession"]). Thus, in deciding the question posed here  whether the public policy of this State, as expressed in its Constitution and statutes, requires District Attorneys to be able to practice law  the principles embodied in the Code are certainly significant.